HELGOE, Respondent, vs. BADE, Appellant.
STOLL, Respondent, vs. BADE, Appellant.

*February 6—March 4, 1930.*

194

For the appellant there was a brief by *Buehler & Buehler* of Alma, attorneys, and *Bundlie & Kelley* of St. Paul, Minnesota, of counsel, and oral argument by *G. J. Bundlie* and *Emil Buehler.*

*James J. Gleeson* of Alma and *Q. H. Hale* of La Crosse, for the respondent.

FOWLER, J.   No errors relating to the findings of the jury upon the questions of negligence are claimed by appellant except those involved under his contentions that the defendant was not guilty of negligence as matter of law; that Stoll was guilty of contributory negligence as matter of law; that Helgoe was guilty of contributory negligence as matter of law; and that if Helgoe was not guilty he was not a guest

but on a joint enterprise with Stoll, and Stoll's negligence is imputable to him. The last point need not be considered if Stoll was not negligent.

The defendant's automobile was parked on the right side of the road in front of a cheese factory partly within and partly without the highway, where he had left it while unloading a can of milk. The defendant had emptied his milk and replaced the empty can in his car. He claims that he looked to his left as he returned to the car, looked again after passing in front of his car and again after shutting the rear door after putting in the empty can, and that he did not see the other car approaching. He claims to have looked to the left and right just before starting his car, but not through the back window. From the testimony of Stoll and other evidence it appears without dispute or might reasonably be inferred that Stoll, the driver of the Ford, was approaching from behind defendant's car driving about the middle of a three-rod road eighteen feet wide in the graveled part. He saw the defendant's car standing still facing towards the center of the road at a slight angle. As he came close to the parked car the defendant suddenly shot into him. Stoll had come around a turn in the road 370 feet to the rear of the parked car, slacking his speed to ten miles an hour at the turn. He had increased his speed to fifteen or twenty miles an hour by the time he reached defendant's car. The front of his car struck and followed the running-board of defendant's car. His right front wheel apparently jumped and struck on top of the rising part of defendant's left front fender and plaintiff's car tipped over. The defendant on starting his car turned it towards the left. He started up so suddenly and fast that the rear wheels threw up gravel. As the plaintiffs approached they noticed some men working on the roof of a house near the place of accident and exchanged salutations with them without stopping.

It is strenuously urged by appellant's counsel that the

fact that a tire mark and dent on the upper surface of the slanting portion of defendant's front fender made at the time of the collision demonstrates that the collision could not have occurred as Stoll claims. That it did not occur precisely as he claims is probably true. Stoll may have been more than a foot or two behind the defendant's car when defendant started it, and Stoll may have been going somewhat faster than he claims and the defendant may not have started up as fast as he claims. Even so, we consider that the questions respecting the lookout of the parties and Stoll's speed and defendant's management of his car were for the jury to determine. A driver may momentarily divert his attention to the side when there is no traffic and nothing ahead but a car parked by the roadside without being held guilty of negligence as matter of law. *Duby v. Columbia County,* 194 Wis. 172, 215 N. W. 819. We are of opinion that the findings of the jury upon the questions of negligence must be upheld.

Appellant's counsel also contend that the damages assessed by the jury are excessive. Helgoe's injuries consisted of fractures of both bones of one leg below the knee, with fragments of bone between the parts of the broken bones, preventing reduction in the usual manner, so that a metal plate had to be applied. His right shoulder blade was fractured. His eighth and ninth ribs were torn loose from their connection with the breast bone and there is now a lump the size of a hen's egg at their place of union. There was a dislocation or fracture at the juncture of two sections of the breast bone at their line of union and a deformity now exists at this line. An operation on the prostate gland was precipitated by reason of the patient being required to lie on his back in the hospital, which operation might not have been necessary otherwise for eight or ten years, if ever. Anæsthetics were twice applied in the reduction of the fractured leg. Opiates were given to relieve the patient's pain while in the hospital. The broken shoulder blade united

in such a way as to leave projections which cause irritation, and irritation is also caused by the metal plate in the leg. The deformities of the shoulder blade and at the union of the parts of the breast bone and of the ribs with the breast bone are all permanent and the latter causes pain on leaning over. Helgoe also suffered a head injury that rendered him unconscious until after his arrival at the hospital. He experienced great shock and suffered great pain. There was some bleeding from his right ear and nose and a blood clot the size of a saucer formed at the back of his head. The prostate operation was deferred for a time on account of the patient's low condition and his urine removed by a catheter in the meantime. He was in the hospital fifteen weeks at first and returned for the prostate gland operation a week or so afterwards. He still suffers pain in his shoulder and leg and some in the chest and is not able to use the leg as before. He does not sleep well. He had never had prostate gland trouble or other ill health before the injury. He weighed 165 pounds before the injury and 125 at the time of the trial. He was sixty-five years old when injured and had retired from farming shortly before, but up to that time had been doing a man's work. His doctor's and hospital bills amounted to about $850. He had not been able to do any work from the time of the injury, October 25, 1928, to April 11, 1929, but had suffered no loss of earnings from his disability.

Stoll was knocked unconscious. His head was skinned, ear smashed, right shoulder hurt, left shoulder bruised. There is a scar from his left eye to his left ear. There was a hole in his leg as big as a half dollar which is now healed up. He was black and blue for three weeks and suffered much pain. His left shoulder pains yet all the time, and the pain runs down his arm over his hand. One finger was cut. He is not as able to work as before. His right arm is not getting better. He began working some on his farm three or four days after the injury, choring, driving team, and

doing what he could. He plowed in ten days. He does not rest nights, sleeping only from midnight to morning. He has pain in the back of his head and in his arm. He milks two cows with both hands and does some hard work. The damage to his car was $125. The inference that his condition is as stated must rest largely upon his own testimony but the jury might properly believe him. His doctor testifies that Stoll was in an excited condition when he treated his injuries; that there was a fracture of the first thoracic vertebra; that the fractured portion presses the nerves that leave the spinal column at the point and that this accounts for his pain; that the condition will continue for the rest of his life, and there is a partial disability or impairment of ability to labor at times.

The awards of damages, especially to Stoll, are doubtless liberal, but we consider that they are not beyond what the jury might properly award.

*By the Court.*—The judgments are affirmed.